UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 09-177 |
| DALTON BENNETT, ET AL. | SECTION "N" |

**ORDER AND REASONS**

Before the Court is the Motion to Suppress and for Evidentiary Hearing (Rec. Doc. 64). In this motion, Defendant Dalton Bennett ("Bennett") moves this Court to suppress certain items seized after he claims state law enforcement agents stopped, detained, and arrested him without probable cause and without a warrant to arrest him. The Government opposed this motion (See Rec. Doc. 68). This Court held an evidentiary hearing on January 27, 2010.[1] After considering the memoranda of counsel, the applicable law, and the admissible evidence, the Court denies this motion.

**I.  BACKGROUND**

On the night of February 19, 2008, Bennett was stopped while driving a vehicle in New Orleans and was thereafter arrested by agents of the New Orleans Police Department ("NOPD") for alleged violations of Louisiana's drug laws. According to the NOPD police report, the arresting

---

[1] The only witnesses who testified at the hearing were: Detective Dean Moore ("Moore") and Detective Chad Perez ("Perez"). (Defense counsel submitted an affidavit from Bennett, who did not otherwise testify.) (See Rec. Doc. 64-3). At the conclusion of the evidentiary hearing, the Court held the record open to conduct an in camera review of the audio recordings that Bennett sought to introduce at the hearing. Following the hearing, the Court received the applicable audio recordings and transcripts of such recordings, with the appropriate designations from counsel.

officer, Perez, received a tip from a known confidential informant ("CI") that Bennett was "secreting crack cocaine" inside a blue Nissan Titan parked at South Johnson and First Streets. The CI stated that, after observing hand-to-hand drug transactions, the drugs were "hidden inside the vehicle behind the radio" located "on the vehicle's dashboard." According to the report, Perez was familiar with Bennett from previous narcotics investigations in that same area in years past and was aware of Bennett's extensive criminal history to include arrests for both narcotics and firearms. Perez also knew that Bennett's mother resided at that location.

Based on this, Perez and Moore drove to the scene. As they approached the intersection of First Street, driving on South Johnson Street in a marked police unit, they observed Bennett and Danquell Miller ("Miller") exit Bennett's mother's house. Bennett was carrying a suitcase which he placed in the rear seat, and then got into the driver's seat. Miller sat in the front passenger seat. Bennett then started to drive the vehicle on South Johnson Street, and the officers followed. According to the report, the officers observed two traffic violations: the failure to use a turning indicator and exceeding the posted speed limit assigned for a residential neighborhood. The officers then activated their emergency lights and siren and attempted to pull Defendants' vehicle over. According to the report, instead of pulling over, Bennett slowed down and ran a stop sign located at Fourth Street and Claiborne Avenue. With the aid of their spotlight, the officers were able to "see the occupants of the truck moving around inside." The truck then pulled over three blocks after the initial police signal to stop.

The report indicates that the officers ordered Defendants out of the car, directed them to the front of the police unit, and conducted a protective pat down. Perez did not see any weapons or contraband inside the vehicle in plain view, but smelled an intense odor of lemon air freshener. The

2

officers knew from their experience that narcotics traffickers often use strong concentrations of air freshener to mask the odor of narcotics. Perez then called in a canine unit and read Defendants their Miranda rights. According to the report, Bennett did not object to the canine search. The canine indicated first at the Driver's door and then, once inside the vehicle, on the dashboard radio, where the officers found the handgun and crack cocaine stored behind a removable panel. A Hertz rental agreement for the truck in the name of Nicole Williams ("Williams"), Bennett's girlfriend and co-defendant, was also recovered. Perez also removed from Bennett's person the sum of $2,419.00, largely comprised of small bills.

After arresting Bennett only, the officers relocated to his residence. According to the report, Williams cooperated and gave the officers written consent to search the residence she shared with Bennett. Perez seized $1,000.00 from Williams' purse because she advised that "the money belonged to Bennett."

## II.     DISCUSSION AND ANALYSIS

Bennett asserts that the arrest and search are unconstitutional because there was no valid basis to initiate the stop, no basis to arrest him, and no basis to search the vehicle. Without a warrant, without a just reason to make the traffic stop, and without probable cause to search the vehicle, Bennett contends that all evidence seized from the vehicle must be suppressed as well as all of the other evidence in the government's case that flows from this illegal search and seizure. Essentially, Bennett claims that the traffic stop was solely pretextual.

First, Bennett claims that he committed no traffic violations. Second, Bennett claims that there was no CI that provided the officers with any information. Instead, Bennett alleges that the officers spent a significant amount of time searching the car and only called the canine unit because

they could not find anything. Third, Bennett argues that the officers' version of the arrest and search is not credible. To support these assertions, Bennett has requested that two recorded conversations be introduced. On these recordings, Bennett is recorded talking on the telephone from prison. Bennett notes that the Government intends to offer these recordings into evidence to support the charges in this case. Thus, Bennett claims that he should be allowed to introduce certain parts of these conversations pertaining to the arrest and search which he claims corroborate his allegations. For example, Perez reports that he seized $1,000.00 from Williams; however, Bennett argues that Perez seized $3,000.00 from Williams but only turned in $1,000.00 to the evidence room. (See Exhibit A to Rec. Doc. 64).

In opposition, the Government notes that Bennett had no authority to drive the rental vehicle that he was stopped in, as it was rented in Williams' name, without a designation of any other authorized driver. Based on this fact, the Government argues that Bennett has no standing to challenge the search. It is true that in *United States v. Boruff*, 909 F. 2d 111 (5 Cir. 1990), the Fifth Circuit determined that an individual who is not an authorized driver of a rental vehicle lacks standing to contest a search. Here, however, the Court must first determine whether the stop itself was legal.

Based on the evidence presented, the Court finds the officers' version of events to be more credible that Bennett's version.[2] After receiving a tip from a CI[3], the officers relocated to the

---

[2] The Court determines that the recorded conversations proffered by Bennett, while obviously authentic, are not admissible, even when analyzing the Federal Rules of Evidence under the relaxed standard utilized in pretrial suppression hearings. See *U.S. v. Postado*, 57 F3d 428, 435 (5th Cir. 1995). The defense has presented the Court with no authoritative law that requires admission. However, after conducting an in camera review of these recorded conversations (by way of transcription), the Court finds that even if they were admissible, they are insufficient to persuade the Court that the officers' testimony is not credible.

[3] While Bennett disputes the existence of a CI, the Court determines that at the evidentiary hearing, the officers and Government went to great lengths to protect the CI's identity - even concerning themselves with pronoun usage so as not to reflect the gender of the CI. Thus, based on the evidence and testimony and the efforts to protect the CI's identity, the Court determines that there was indeed a CI involved in this matter.

location where Bennett was said to be and witnessed him getting into a vehicle. As the officers followed him, Bennett committed the aforementioned traffic infractions, which created probable cause for the officers to stop the vehicle. First, Bennett was observed making a left turn without using his turning signal. Louisiana courts have found probable cause when an officer initiates a vehicle stop after viewing a failure to use a turn signal. See *State v. Preston*, 880 So. 2d 64 (La. App. 5 Cir. 7/27/04) (Defendant's failure to signal when he made a left turn from the road into parking lot authorized the deputy to make a traffic stop.); *State v. Lee*, 836 So. 2d 589 (La. App. 5 Cir. 12/30/02)( Seizure of guns found on the floorboard of a vehicle in which the defendant was a passenger was lawful under the plain view exception to the warrant requirement, where officer was justified in stopping the vehicle for seat belt and turn signal violations).

Next, Bennett drove in excess of the speed limit. Then, after noticing the marked police vehicle, Bennett proceeded to run through a stop sign and refused to pull over to the side of the road after signaled to do so by the NOPD. Bennett eventually pulled the vehicle to the side of the road. Based on the showing made on the briefs and at the evidentiary hearing, the Court finds that the officers had probable cause to stop the vehicle. After determining that the vehicle was properly stopped, Bennett has no standing to challenge the search of the rental vehicle or the fruits of that search because he was not an authorized driver of the rented vehicle. See *Boruff*, 909 F. 2d 111. However, even if he was entitled to challenge the search, the Court finds that probable cause to search the vehicle did exist.

As the officers approached the stopped vehicle, they noticed the overpowering scent of air freshener emanating from the vehicle. The Fifth Circuit has found that the overpowering scent of

5

air freshener combined with additional factors[4] can create probable cause. See *United States v. Reyna*, 546 F. 2d 103 (5th Cir. 1977). Moreover, in *Pennsylvania v. Labron*, 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1991), the United States Supreme Court concluded that a "readily mobile" automobile may be searched where there is probable cause to believe it contains contraband or evidence of criminal activity. Finally, based upon all this information as well as information learned from the CI regarding Bennett's drug-related activity, the officers requested that a canine unit come to the scene. The canine indicated on the radio area of the vehicle, where officers subsequently retrieved a handgun and crack cocaine from a hidden compartment in the dashboard. The Fifth Circuit has repeatedly found probable cause in cases involving a drug canine alert on a vehicle. If a canine alerts to the door of an automobile (which is what occurred here), officers have probable cause to search the car. *United States v. Seals*, 987 F.2d 1102, 1106-1107 (5th Cir. 1993); *United States v. Dovali-Avila*, 895 F.2d 206, 207 (5th Cir. 1990). Thus, for all of these reasons, there is no basis to suppress the evidence in this case.

## III. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the **Motion to Suppress (Rec. Doc. 64)** is **DENIED.**

New Orleans, Louisiana, this 3rd day of February, 2010.

**KURT D. ENGELHARDT**
**United States District Judge**

---

[4] Here, these additional factors include the traffic violations the officers witnessed, the tip from the CI, the failure to immediately pull the car to the side of the road when signaled to do so, and seeing the occupants of the vehicle moving around inside frantically after they were signaled to pull to the side of the road.