UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 09-177** |
| **v.** | * | **SECTION: "B"** |
| **DALTON BENNETT** | * | |
| | * * * | |

**GOVERNMENT'S RESPONSE TO DEFENDNANT'S MOTION
TO VACATE, SET ASIDE, OR CORRECT SENTENCE (Rec. Doc. 559)**

**MAY IT PLEASE THE COURT:**

The United States of America, through the undersigned Assistant United States Attorney, hereby responds to petitioner Dalton Bennett's Motion to Vacate, Set Aside, or Correct his Sentence. *See* Rec. Doc. 559. For the reasons below, this Court should deny this Motion without an evidentiary hearing as there are there are no facts in dispute, and because it is untimely, it is a second and successive 2255 motion, his claims are not supported by the recent case law he relies on, and even if his claim as to Count 4 (Felon in Possession of a Firearm) was supported by the recent case law, a dismissal of that count would have no effect on his sentence.

**I.      Procedural and Factual History:**

In June 2010, a jury convicted Dalton Bennett ("Bennett") of seven crimes: conspiracy to possess with intent to distribute at least 50 grams of cocaine base ("crack") (Count 1); possession with intent to distribute at least 5 grams of crack (Count 2); possessing a firearm in furtherance of a drug-trafficking crime under 18 U.S.C. § 924(c) (Count 3); being a felon in possession of a firearm (Count 4); conspiracy to obstruct justice (Count 6); possessing with intent to distribute 50 grams of crack (Count 8); and using a telephone to facilitate the drug-trafficking conspiracy (Count 9). *See* PSR ¶¶ 1-14; SS Ind't (Rec. Doc. 15, pp. 1-5); Verdict Form (Rec. Doc. 191-1, pp. 8-9,

11). Bennett had been part of the drug conspiracy along with his brother Lance Bennett, Danquell Miller, Shelley Knockum, and Nicole Williams. *See* PSR ¶¶ 15-40.

Dalton Bennet had been detained following a traffic stop in which police officers found a stolen .40 caliber handgun and a plastic bag containing crack. PSR ¶¶ 15-23. While detained in Orleans Parish Prison, law enforcement obtained Dalton Bennett's recorded phone calls over a sixteen-month period. PSR ¶ 26. In the calls, Dalton Bennet told Williams, his girlfriend, that the gun and crack were his but told her to get someone to take ownership of the drugs and say the gun belonged to a third person. PSR ¶ 28. Dalton Bennett also told his brother Lance Bennett to sign a false affidavit taking ownership of the drugs and the gun, something he discussed with numerous people. PSR ¶ 28-29. Dalton Bennett also told Miller to give the specifics of the case to Lance Bennett to make certain the affidavit was factually correct. PSR ¶ 28. Eventually, Dalton Bennett decided that a third person should sign the affidavit, and he agreed to pay that person for doing this favor. PSR ¶ 29.

In later jail calls after his federal indictment, Dalton Bennet spoke with Williams and others and led them to his stash location, which contained eleven bags of crack. PSR ¶¶ 31-32. Once they found the bags, Dalton Bennett told them to distribute the crack through Miller. PSR ¶ 32. Williams eventually sold crack for Dalton Bennett. PSR ¶ 32.

Dalton Bennett was on parole at the time of his arrest. PSR ¶ 30. Because he had four prior convictions for felony drug offenses, *see* § 851 Information (Rec. Doc. 96, pp. 1-2); PSR ¶¶ 13, 59-60, 63-64, he faced mandatory terms of life imprisonment on Counts 1 and 8 and a minimum of ten years' imprisonment on Count 2. *See* 21 U.S.C. § 841(b)(1)(A) & (B) (2010); PSR ¶ 104.

2

United States Probation determined that Dalton Bennett was responsible for at least 50 but less than 150 grams of crack. PSR ¶¶ 37, 48. It recommended a four-level enhancement for leadership, PSR ¶¶ 37, 50, and a two-level enhancement for obstruction of justice, PSR ¶¶ 43-45, 52, for a total offense level of 36. PSR ¶ 53. However, Dalton Bennett's prior drug-trafficking and armed robbery convictions qualified him for a career-offender enhancement, so his total offense level became 37. PSR ¶¶ 54, 56, 59, 64. Because of this status, as well as his sixteen criminal history points, he had a criminal history category VI, PSR ¶¶ 66-69, which yielded an advisory Guidelines range of 360 months to life. PSR ¶ 105. However, this range was restricted to the applicable mandatory life sentence under U.S.S.G. 5G1.1(b) for Counts 1 and 8. PSR ¶ 105. He was also subject to a consecutive sentence of at least sixty months for the § 924(c) conviction. PSR ¶ 105.

The sentencing Court adopted the PSR without change. Sent. Tr. (Rec. Doc. 259, pp. 25); Statement of Reasons 1.[1] It then sentenced Dalton Bennett to life imprisonment on Counts 1, 2, and 8. Judgment (Rec. Doc. 234, p. 2).[2]

Just over a month before sentencing, Congress had passed the Fair Sentencing Act of 2010. That Act had pertinently raised the threshold quantity of crack needed to trigger Dalton Bennett's mandatory minimum sentences on Counts 1, 2, and 8. *See* Pub. L. No. 111–220; 124 Stat. 2372. However, in absence of controlling precedent at the time, the Court found that the Act's new provisions did not apply. *See* Sent. Tr. 20. In any event, for the same reasons it found the mandatory life sentence appropriate, the sentencing court stated that "this would be Dalton Bennett's sentence

---

[1] United States District Judge Kurt D. Engelhardt presided over the case. The matter was reassigned to this Court following Judge Engelhardt's appointment to the Fifth Circuit in 2018. *See* R. Doc. 399.

[2] The Court sentenced Dalton Bennett to a consecutive sixty-month term for Count 3 and to the maximum statutory sentences on the other counts. Judgment 2.

3

regardless of whether the [Fair Sentencing Act] applies retroactively and regardless of any impact on the defendant's guideline range." Sent. Tr. 18; *see also* Statement of Reasons 5.

The Fifth Circuit affirmed. *United States v. Bennett*, 664 F.3d 997, 1013 (5th Cir. 2011), *cert. granted, judgment vacated as to sentence for Lance Bennett*, 567 U.S. 950 (2012).[3] It mentioned the sentencing Court's statement that the same sentence would have been imposed pursuant to the factors in 18 U.S.C. § 3553(a). *Id.* at 1007.

On June 6, 2013, Dalton Bennett filed a motion seeking post-conviction relief, pursuant to Title 28, United States Code, Section 2255. (Rec. Doc. 332). This motion was denied on August 5, 2014. (Rec. Doc. 384).

On December 21, 2018, the President signed into law the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("First Step Act"). Section 404(b) of the First Step Act pertinently allowed defendants sentenced under statutory, mandatory minimum provisions for cocaine base ("crack") offenses under 21 U.S.C. § 841(b)(1)(A) & (B) prior to August 3, 2010, that were lowered by the Fair Sentencing Act to petition courts to reduce their sentences as if the lower sentencing provisions were in effect at the time the offenses were committed. Dalton Bennett filed a motion seeking relief under the First Step Act. (Rec. Doc. 413).

---

[3] Dalton Bennett did not challenge his sentence under the Fair Sentencing Act, so *Dorsey v. United States*, 567 U.S. 260 (2012), which held that the benefits of the Fair Sentencing Act applied to defendants sentenced as of its enactment on August 3, 2010, *id.* at 281, did not disturb the Fifth Circuit's initial affirmance of his sentence. *See United States v. Bennett*, 485 F. App'x 673, 674 n.1 (5th Cir. 2012).

4

Pursuant to the Order of the Chief Judge of the Eastern District of Louisiana, the 1stSA Committee screened the defendant's case. The committee agreed that the defendant was eligible for a potential reduction; that his post-Fair-Sentencing-Act statutory sentencing range for Counts 1 and 8 was 120 months' imprisonment to life imprisonment; that his post-Fair-Sentencing-Act statutory sentencing range for Count 2 has no minimum and has a maximum of thirty years' imprisonment; and that his post-Fair-Sentencing-Act Guidelines range remained at 360 months to life imprisonment. *See* 1st SA Committee Screening Form 1-2.

The government opposed a reduction. *See* 1st SA Committee Screening Form 2. Counsel from the CJA panel enrolled Dalton Bennett's behalf. Rec. Docs. 431, 433.

Eventually, the Court reduced Bennett's life sentence to 336 months in accordance with the First Step Act. (Rec. Doc. 460).

On June 8, 2021, Bennett filed a motion to reduce his sentence pursuant to the Compassionate Release statute. (Rec. Doc. 462). On October 12, 2021, this Court denied his request for Compassionate Relief. (Rec. Doc. 469).

On March 15, 2023, Bennett filed a motion seeking a reduction of his sentence, pursuant to Title 18, United States Code, Section 3582. (Rec. Doc. 475). On May 1, 2024, this request was also denied. (Rec. Doc. 552).

On July 29, 2024, Bennett filed this second and successive motion for post-conviction relief, pursuant to Title 21, United states Code, Section 2255. (Rec. Doc. 559).

**II.     Claims raised in Petitioners 2255:**

On July 29, 2024, Dalton Bennett filed this current motion to vacate, set aside, or correct a sentence pursuant to Section 2255. In his motion he claims that the recent rulings by the United States Supreme Court in *New York State Rifle and Pistol Association, Inc. v. Bruen,* 142 S.Ct. 2111

5

(2022) and *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), cert granted No. 22-915, 2023 WL 4278450, that his firearms convictions in Count 3 (possession of a firearm in furtherance of a drug trafficking crime) and Count 4 ( felon in possession of a firearm) are unconstitutional.

### III.     Bennett is not entitled to an evidentiary hearing.

"A § 2255 motion can be denied without an evidentiary hearing if 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Gladney*, 692 F. App'x 185, 185 (5th Cir. 2017) (quoting 28 U.S.C. § 2255(b)). If the petitioner's argument "consists of mere conclusory allegations or is otherwise inconsistent with the bulk of his conduct, an evidentiary hearing is unnecessary." *United States v. McDaniels*, 907 F.3d 366, 370 (5th Cir. 2018) (quotation marks, citations, and brackets omitted); s*ee also United States v. Batamula*, 823 F.3d 237, 243 (5th Cir. 2016) (en banc) (where a petitioner's claim as to prejudice is "frivolous," a district court may "summarily dismiss the claim without holding an evidentiary hearing").

In this case, Bennett's filing suffers from multiple procedural defects, and the facts and law already available to this Court demonstrate conclusively that Bennett is entitled to no relief. There are no facts that could be elicited at an evidentiary hearing that would assist this Court's analysis. Furthermore the United States Supreme Court overruled the United States Fifth Circuit opinion in *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023). See *United States v. Rahimi*, 144 S. Ct. 1889 (2024). Based on this alone, Bennett's request for an evidentiary hearing should be denied.

### IV.     Defendant's 2255 Motion should be dismissed as a Second or Successive Petition:

In *United States v. Clay*, 921 F.3d 550, 554 (5th Cir. 2019), as revised (Apr. 25, 2019), the Fifth Circuit provided background on successive petitions: Under 28 U.S.C. §§ 2244(b) and 2255(h), "[a] second or successive habeas application must meet strict procedural requirements

6

before a district court can properly reach the merits of the application." *United States v. Wiese*, 896 F.3d 720, 723 (5th Cir. 2018). "There are two requirements, or 'gates,' which a prisoner making a second or successive habeas motion must pass to have it heard on the merits." Id. (internal citation omitted). First, the prisoner must make a "prima facie showing" to the circuit court "that the motion relies on a new claim resulting from either (1) 'a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable,' or (2) newly discovered, clear and convincing evidence that but for the error no reasonable fact finder would have found the defendant guilty." Id. (quoting 28 U.S.C. §§ 2244(b), 2255(h)). Second, after receiving permission from the circuit court to file a successive petition, "the prisoner must actually prove at the district court level that the relief he seeks relies either on a new, retroactive rule of constitutional law or on new evidence." Id. (citing 28 U.S.C. § 2244(b)). Where a prisoner fails to make the requisite showing before the district court, the district court lacks jurisdiction and must dismiss his successive petition without reaching the merits. Id.

As stated above, the defendant filed a 2255 motion back on June 6, 2013, seeking post-conviction relief. (Rec. Doc. 332). This motion was denied on August 5, 2014. (Rec. Doc. 384). Therefore, this current 2255 motion is a second or successive motion. Furthermore, the defendant has not produced either (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable, or (2) newly discovered, clear and convincing evidence that but for the error no reasonable fact finder would have found the defendant guilty. Because if this failure, this current 2255 motion should be dismissed.

### V. This Court should deny the Petitioner's 2255 Motion because it is untimely.

Title 28 U.S.C. § 2255(f) requires that all § 2255 petitions be filed within one year of (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Further, Bennett's motion is not based on a right that has been newly recognized by the Supreme Court. *See* 28 U.S.C. § 2255(f)(3). Accordingly, it may be timely only if it was filed after the removal of an unconstitutional or unlawful government impediment, *see* 28 U.S.C. § 2255(f)(2), after facts supporting the claim presented could have been discovered through the exercise of due diligence, *see* 28 U.S.C. § 2255(f)(4), or if the one-year statute of limitations is subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010).

As to § 2255(f)(2), Bennett has not demonstrated an unconstitutional or unlawful government impediment that prevented him from filing his § 2255 motion earlier. Those types of impediments include prisons unconstitutionally restricting access to law libraries, legal assistance, or legal materials. *See United States v. Saenz-Lopez*, 361 F. App'x 593, 595 (5th Cir. 2010); *Salazar-Rodriguez v. United States*, No. 13-172, 2015 WL 12672325, at *4 (S.D. Tex. Aug. 5, 2015). Courts have held that pandemic-related restrictions do not qualify as unconstitutional or unlawful government impediments. *See, e.g., Sloan v. United States*, No. 18-cr-40051, 2021 WL 6102164, at *2 (C.D. Ill. Dec. 23, 2021) ("While Sloan argues that the COVID-19 pandemic

hindered his access to the law library, Sloan has identified no governmental action that was 'in violation of the Constitution or laws of the United States' that *prevented* him from making his motion for purposes of § 2255(f)(2).") (emphasis in original). Therefore, § 2255(f)(2) does not excuse the untimeliness of Bennett's motion.

Nor does the "due diligence" provision in § 2255(f)(4). Under § 2255(f)(4), "a petitioner's diligence must merely be 'due' or 'reasonable' under the circumstances." *United States v. Jackson*, 470 F. App'x 324, 327 (5th Cir. 2012). "[D]iligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize that he should act." *Id.* (quotation marks omitted). "In applying § 2255(f)(4), the important thing is to identify a particular time when diligence is in order." *Id.* (quotation marks, brackets, and ellipsis omitted). Bennett has not argued or established that his untimeliness should be excused by the exercise of due diligence.

Finally, Bennett is not entitled to equitable tolling for his late filing. "A petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently," and (2) that some extraordinary circumstance stood in his way." *Jackson*, 470 F. App'x at 329 (quotation marks omitted). "An institutional lockdown or a delay in access to a law library is not itself a rare and exceptional circumstance that warrants equitable tolling." *Coppin v. United States*, 2018 WL 1122175, at *4 (N.D. Tex. Mar. 1, 2018); *see also United States v. Johnson*, 2018 WL 2939496, at *2 (E.D. Tex. June 11, 2018) ("[G]enerally, neither Defendant's time in state custody, nor the prison lockdown, considered independently or in conjunction, constitutes one of those 'rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'") (quoting *United States v. Petty*, 530 F.3d 361, 365 (5th Cir. 2008)). Bennett has not

9

argued that he is entitled to equitable tolling, and, even if he had, the circumstances of his case do not call for it.

Here, Bennett's conviction became final on April 2, 2012. On December 16, 2011, the United States Fifth Circuit affirmed the defendant's conviction and sentence. *United States. v. Bennett*, 664 F.3d 997 (5th Cir. 2011). On April 2, 2012, the Supreme Court denied Bennett's petition for *certiorari*. *Bennett v. U.S.,* 132 S. Ct. 1875 (2012). Since more than twelve years have passed since this conviction has become final, this 2255 motion should be dismissed as untimely.

### VI. Bennett's claims are all procedurally barred.

"Relief under § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994). A defendant "may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). "A defendant can establish 'cause' by showing that an objective impediment that is external to his defense prevented him from raising a claim on direct appeal." *United States v. Rodney*, No. 10-102, 2014 WL 6607069, at *3 (E.D. La. Nov. 18, 2014) (Lemmon, J.) (citing *United States v. Flores*, 981 F.2d 231, 235 (5th Cir. 1993)). "To show 'actual prejudice' the defendant must demonstrate not just the possibility of prejudice, 'but an actual and substantial disadvantage, infecting his entire proceedings with error of constitutional dimension.'" Id. (quoting *Shaid*, 937 F.2d at 233) (brackets omitted). That a claim would have been futile on direct appeal is not enough to overcome procedural default. *Scruggs*, 714 F.3d at 264.

In this case, Bennett filed a direct appeal in which he raised several issues, including the jury selection process, motion for a new trial, Brady/Giglio claims, and challenges to his sentences. *United States. v. Bennett*, 664 F.3d 997 (5th Cir. 2011). Bennett did not argue on appeal that his convictions for being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1) or for possessing a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c), were unconstitutional.

Bennett's claims in his § 2255 motion concerning the constitutionality of these laws are therefore procedurally barred unless he can establish both cause for the procedural default and actual prejudice resulting from any error. See *Shaid*, 937 F.2d at 232.

First, Bennett cannot demonstrate cause for the procedural default. Nowhere in his § 2255 motion does Bennett allege that an objective impediment that was external to his defense prevented him from challenging the constitutionality of these firearms laws. As a result, Bennett's claims are procedurally barred. See id.

Second, Bennett cannot show prejudice resulting from any error. Even assuming that Bennett could establish cause for his procedural default, he has not demonstrated a constitutional defect that led to an actual or substantial disadvantage during his conviction or sentence. See id. at 233.

In his 2255 motion, Bennett relies on *New York State Rifle and Pistol Association, Inc. v. Bruen,* 142 S.Ct. 2111 (2022) and *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), cert granted No. 22-915, 2023 WL 4278450, to argue that his firearms convictions in Count 3 (possession of a firearm in furtherance of a drug trafficking crime) and Count 4 ( felon in possession of a firearm) were unconstitutional. However, the United States Supreme Court overruled the Fifth Circuits opinion in *Rahimi*. See *United States v. Rahimi*, 144 S. Ct. 1889 (2024). In *Rahimi*, the Supreme

11

Court held that the prohibition on firearm possession while subject to a domestic-violence restraining order in 18 U.S.C. § 922(g)(8) did not violate the Second Amendment.

In this case the Supreme Court reversed the Fifth Circuit in an 8-1 decision, that held that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Rahimi*, 144 S. Ct. at 1903. The Court observed that "some courts have misunderstood the methodology of our recent Second Amendment cases," which "were not meant to suggest a law trapped in amber." Id. at 1897. It emphasized that a modern regulation "must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.' " Id. at 1898.

The Court explained that Section 922(g)(8)'s constitutionality was supported by historical surety laws, which authorized magistrates to "require individuals suspected of future misbehavior to post a bond," and historical "going armed" laws, which "provided a mechanism for punishing those who had menaced others with firearms." *Rahimi*, 144 S. Ct. at 1900-1901. "Taken together," the Court said, "the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." Id. at 1901. Although Section 922(g)(8) "is by no means identical to these founding era regimes," it nevertheless "fits neatly within the tradition the surety and going armed laws represent." Ibid. Because the provision was "constitutional as applied to the facts of Rahimi's own case," the Court rejected *Rahimi's* facial challenge. Id. at 1898.[4]

---

[4] In her concurring opinion, Justice Barrett stated that "the Department has identified two additional principles that we believe are supported by history and framed at the right level of generality." *Rahimi*, 144 S. Ct. at 1926 (Barrett, J., concurring). First, "Congress may disarm individuals who have been convicted of crimes that satisfy the common definition of a felony—that is, crimes punishable by imprisonment for more than one year." *Petition for Certiorari at 19, Garland v. Range*, No. 23-374 (Oct. 5, 2023). Second, Congress may "disarm . . . individuals whose possession of firearms would endanger themselves or others." Id. at 16-17.

Based on the foregoing, Bennett's challenges to his conviction and sentence pursuant to this 2255 post-conviction motion should be dismissed, as neither firearms offense under 18 U.S.C §§ 922(g)(1) or 924 (c), have been held to be unconstitutional by the Supreme Court.

Respectfully submitted,

DUANE A. EVANS
UNITED STATES ATTORNEY

*/s/ Maurice E. Landrieu, Jr.*
MAURICE E. LANDRIEU, JR. (#22104)
Assistant United States Attorney
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone No. (504) 680-3015
maurice.landrieu@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2024, I filed the foregoing document with the Clerk of Court and have further e-mailed a copy to inmate Dalton Bennett (prisoner number 31096-034) at the Federal Correctional Institution – Pollock, PO Box 4050 (Med), Pollock, Louisiana 71467.

*/s/Maurice E. Landrieu, Jr.*
MAURICE E. LANDRIEU, JR.
Assistant United States Attorney